NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITED STATES OF AMERICA : <br> : <br> v. : <br> : <br> EMMANUEL JONES : <br> : | **Criminal Action No. 07-143 (SRC)** <br><br> **OPINION** |

**CHESLER**, District Judge

This matter comes before the Court on a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) brought by Defendant Emmanuel Jones ("Defendant"). The United States of America ("Government") objects to the motion. The Court, having considered the papers filed by the parties, proceeds to rule on the motions without oral argument. For the reasons that follow, the Court will deny Defendant's motion.

**I.     Background**

Defendant was a Jersey City-based member of the Fruit Town Brims ("FTB"), a set of the Bloods street gang. On July 19, 2004, Anthony Walker ("Walker"), an FTB member, became involved in a dispute with S.J., who was not a member of the gang. The dispute escalated to the point where S.J. attempted to rob Walker and fired several rounds at him. Walker escaped and found members of FTB to engage in retaliation against S.J. (PSR ¶ 70-71). Defendant arrived at the scene shortly thereafter. Based on reports from a fellow gang-member, the FTB members came to believe S.J. was on Wilkinson Avenue. Defendant and fellow-FTB member Torien Brooks ("Brooks"), both armed, set out on foot to Wilkinson Avenue to find S.J. (PSR ¶ 72).

Defendant and Brooks arrived at Wilkinson Avenue to find M.T., a minor, standing outside with his friends. Mistaking M.T. for S.J., Defendant and Brooks fired at M.T., killing him. Three

other bystanders were struck by stray bullets and sustained non-life-threatening injuries. Defendant and Brooks escaped to a getaway van, where Defendant bragged that he killed their target in the head with his first shot. (PSR ¶ 73).

Defendant was arrested by the Hudson County Prosecutor's Office on November 9, 2004. While incarcerated in the Hudson County Jail, awaiting trial on state charges, Defendant became the leader of his FTB unit. C.C., another incarcerated member of FTB, challenged Defendant for his leadership position in the gang. In retaliation, Defendant instructed incarcerated FTB members under his command to kill C.C. On October 3, 2006, C.C. was severely beaten with a mop and fell down a flight of metal stairs, leaving him unconscious. C.C. suffered serious injuries to his head and neck and was hospitalized for seven days. Defendant admitted to ordering the attack while speaking over a Department of Corrections telephone. (PSR ¶ 94-96).

Defendant was initially subject to a state investigation and prosecution for the murder of M.T. However, the U.S. Attorney's Office and the Federal Bureau of Investigation began investigating FTB. The state offered Defendant a plea offer, and the U.S. Attorney's Office informed Defendant that if he did not accept the state's offer, it would initiate a federal prosecution. Defendant rejected the state plea offer, and on February 27, 2007, the U.S. Attorney's Office unsealed a federal indictment charging Defendant and four other FTB members. A grand jury ultimately returned two superseding indictments, and Defendant was charged with Racketeering Conspiracy (Count One), Murder Conspiracy (Count Two), Murder (Count Three), Assault with a Dangerous Weapon (Counts Four, Five, Six, and Seven), and Possession, Use, and Carrying of a Firearm for Violent Crime (Counts Ten and Eleven). (ECF No. 177).

Defendant pled guilty to Count One of the Second Superseding Indictment, Racketeering

Conspiracy, in violation of 18 U.S.C. §§ 1962(d) & 1963. (ECF No. 257). As part of his plea allocution, Defendant admitted to the murder of M.T. and the conspiracy to murder C.C.

The Probation Office calculated a total offense level of 44, for which Defendant would face a guidelines sentence of life imprisonment. However, as part of his plea agreement, Defendant and the Government agreed to a total offense level of 40, by only considering the murder of M.T. and the conspiracy to murder C.C. as overt acts of the conspiracy, which resulted in a guidelines range of 360 months to life imprisonment. Defendant and the Government agreed that a sentence of 360 months was reasonable. On June 8, 2012, Defendant was sentence to 360 months of imprisonment, in addition to $11,815 in restitution and five years of supervised release. (Sent. Trans. 15:14-17:17).

On December 13, 2022, Defendant filed the instant motion for compassionate release. (ECF No. 444). The Government opposes the motion. (ECF No. 447).

**II.     Discussion**

    a. Legal Standard

Defendant has moved for compassionate release[1] pursuant to 18 U.S.C. § 3582(c)(1)(A). A defendant moving for compassion release must first meet the statute's exhaustion requirement. The requirement is satisfied by requesting to the warden that the Bureau of Prisons (BOP) file a sentence reduction motion and either fully pursuing an administrative appeal of the warden's decision or waiting 30 days from the warden's receipt of the request. United States v. Doolittle, No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

---

[1] Courts often use the terms "compassionate release" and "sentence reduction" interchangeably. Ultimately, the relief provided by § 3582 is some reduction in a moving defendant's sentence.

3

Defendant bears the burden of showing the exhaustion requirement is satisfied. United States v. Epstein, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020).

If the exhaustion requirement is satisfied, the Court may reduce a defendant's sentence if it concludes "there are 'extraordinary and compelling reasons' which warrant a reduction" and "the applicable sentencing factors under 18 U.S.C. § 3553(a) indicate that reducing the defendant's sentence would be appropriate." United States v. Jones, No. 14-463, 2021 WL 3732877, at *2 (D.N.J. Aug. 24, 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

In showing "extraordinary and compelling circumstances," a defendant should show the existence of "uncommon circumstances" such that "continued imprisonment would result in a significant collateral or secondary harm to the defendant." United States v. Andrews, 480 F. Supp. 3d 669, 684 (E.D. Pa. 2020). Courts also find guidance in the policy statements issued by the United States Sentencing Commission. While these policy statements explicitly limit BOP-initiated motions, the Third Circuit has held they are merely persuasive authority for defendant-initiated motions. United States v. Andrews, 12 F.4th 255, 259 (3d Cir. 2021). Courts often rely on these policy statements because they "shed[] a reliable light on the enacting Legislature's understanding of [an] otherwise ambiguous term[]." Id. at 260 (quoting Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005)) (second and third alterations in original). The burden of showing extraordinary and compelling circumstances lies with the defendant. Epstein, 2020 WL 1808616, at *2.

    b. Exhaustion Requirement

Defendant makes no mention of the exhaustion requirement in his pro se brief. He does however attach a "Request for Compassionate Release/Sentence Modification Pursuant to 18

4

U.S.C. § 3582 (c)(1)(A)(i)" and a letter from the warden denying a reduction in sentence pursuant to § 3582 dated June 8, 2021.  The Government, however, asserts Defendant "does not even attempt to contend" he satisfied the exhaustion requirement.  (Gov't Br. at 5).  The Government further represents BOP "confirmed to the Government that it has no record of [Defendant] having filed any request for compassionate release."  (Gov't Br. at 5).

The Court will consider the attached correspondence as part of its obligation to construe pro se filings liberally.  <u>Higgs v. Att'y Gen.</u>, 655 F.3d 333, 339 (3d Cir. 2011).  However, the correspondence does not clearly satisfy the exhaustion requirement.  The correspondence raises issues which are mostly distinct from those raised in the instant motion.  Generally, exhaustion of administrative remedies requires a petitioner to raise all issues in an administrative petition, and those issues that are not raised cannot be raised in a judicial forum.  <u>Cf.</u> <u>Jones v. Bock</u>, 549 U.S. 199, 219-20 (2007) (discussing how individual claims must be exhausted in the context of the Prison Litigation Reform Act).  Defendant's letter to the warden raises the issue of ill family members, his age, the application of 18 U.S.C. § 924(c), and the fairness of the plea-bargaining process.  The instant motion raises several issues of post-conviction rehabilitation, Defendant's age, deterrence, other sentences, and COVID-19 issues.  The only common issue between the current motion and Defendant's attachments is Defendant's age.

Furthermore, it is not entirely clear whether Defendant sent this letter to the warden at a time that would satisfy the exhaustion requirement.  Defendant's letter to the warden bears no markings indicating when it was sent, if it was sent at all.  It is not clear that the warden's letter, which is dated June 8, 2021, is responding to the Defendant's attached letter.  The warden's letter rejects Defendant's contention that "[a] change in the law or sentencing procedure" is an

extraordinary and compelling circumstance. (ECF No. 444-3 at 23). While that language may be referring to Defendant's contention the First Step Act changes the definition of a youth offender, it is possible the warden is responding to some other contention in a letter that is not in the record before the Court.

Despite these concerns, the Court will give Defendant the benefit of the doubt that he exhausted his administrative remedies. Defendant has put forward enough of a showing that he attempted to bring his concerns to the attention of the warden. Mindful that Defendant is proceeding pro se, the Court will allow Defendant to rely on the attached correspondence even if it lacks an explanation that would be useful in understanding its context. Furthermore, there is authority in this circuit suggesting courts should interpret issues broadly for § 3582 exhaustion purposes rather than a strict application of waiver principles. See United States v. Tidwell, 476 F. Supp. 3d 66, 71-72 (E.D. Pa. 2020) (concluding the court should reach all COVID-19 related concerns when a defendant made a pre-COVID petition to a warden for relief due to health concerns). Therefore, the Court will address the merits for all of Defendant's arguments. It concludes, below, that they all lack merit.

    c. Extraordinary and Compelling Circumstances

Defendant states several issues which he asserts constitute extraordinary and compelling circumstances. Specifically, Defendant asserts issues related to COVID-19, post-conviction rehabilitation, his age, deterrence, and the sentences of other defendants, could each constitute extraordinary and compelling circumstances.[2] Contrary to Defendant's assertions, none of these

---

[2] In Defendant's attached correspondence with the warden, Defendant raises issues related to the plea-bargaining process, the application of 18 U.S.C. § 924(c), and health issues of family members outside of prison. These issues are not sufficiently briefed for the Court to consider

6

meet the extraordinary and compelling standard. Nor do these circumstances satisfy the standard when they are considered together.

i. COVID-19, Prison Conditions, and Mental Health

Defendant raises several concerns related to COVID-19. First, Defendant raises concerns about being incarcerated during the COVID-19 pandemic. Second, Defendant raises concerns around prison conditions in light of the COVID-19 pandemic, especially lockdowns. Third, Defendant asserts the prison lockdowns have had a negative impact on his mental health. None of these concerns are an extraordinary and compelling circumstance.

As a general matter, the United States Sentencing Commission offers persuasive guidance as to when a non-terminal health condition meets the extraordinary and compelling standard. The guidance states that a condition may meet the standard when it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" and when a defendant is expected to recover from that condition. U.S.S.G. § 1B1.13 n.(1)(A)(ii). Additionally, the Third Circuit has explained that "the mere existence of COVID-19 in society"

---

them. However, the Court will address them briefly. First, issues with the plea-bargaining process or § 924(c) are attacks on Defendant's conviction, which may not be brought in a compassionate release motion. Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002). Second, the health issues of Defendant's family members are not extraordinary and compelling circumstances. Sentencing Commission Policy Statements, which are persuasive authority in this context, provide two instances of family circumstances that would constitute extraordinary and compelling circumstances: "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children[, or] (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13. The only family member who could come within the meaning of that guidance is Defendant's fiancé Bianca Thomas, and the record does not show she has died or is incapacitated. The Court also concludes, independently from this guidance, that none of the health conditions of Defendant's family members are extraordinary or compelling circumstances. While their health conditions may be serious, they do not excuse Defendant from serving his sentence.

and general risks associated with it, do not justify compassionate release.  United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).  Generally, courts require moving defendants to show how COVID-19 impacts them in a manner distinct from other inmates.

Defendant expresses concerns about being incarcerated during the COVID-19 pandemic. He suggests the pandemic presents a specific danger to him because he is "suffering from countless severe medical conditions." (Def. Br. at 10).  Defendant however does not identify any specific medical conditions that increase his likelihood of serious COVID-19 complications.  Nor does anything in Defendant's records suggest he is at an increased likelihood of developing such complications.[3]  Because Defendant bears the burden of showing an extraordinary and compelling circumstance, and he has not shown how he is at higher risk of COVID-19 complications, Defendant has not shown COVID-19 is an extraordinary and compelling circumstance.

Defendant's assertion fails for a second independent reason.  Defendant has rejected a COVID-19 vaccination.  While it is Defendant's right to make that decision, it undermines Defendant's argument that COVID-19 presents him with a grave risk when he has rejected the most effective way to keep himself safe from the virus.  See United States v. Julien, No. 20-765, 2021 WL 3721596, at *4 (D.N.J. Aug. 23, 2021) ("Defendant is within his rights to refuse the vaccine, but any corresponding argument that he must be released because of potential complications were he to contract the virus rings hollow.").  Defendant's rejection of the vaccine also constitutes a rejection of self-care within the meaning of U.S.S.G. § 1B1.13 n.(1)(A)(ii). District courts across the country largely agree that rejecting a COVID-19 vaccination undercuts

---

[3] Defendant also cites various cases where defendants are granted compassionate release due to medical issues. (Def. Br. at 10-11). But Defendant has not shown he suffers from a similarly serious medical condition, so those cases are not relevant here.

8

any argument that the risk of COVID-19 is an extraordinary and compelling circumstance. See, e.g., United States v. Sawyers, No. 15-00070, 2021 WL 2581412, at *4 (C.D. Cal. June 22, 2021) ("The glaring consensus among district courts is that refusal of a COVID-19 vaccine subverts a defendant's compassionate release motion.").

Defendant asserts the COVID-19 lockdowns in his prison are an extraordinary and compelling circumstance. However, the lockdowns impact all prison inmates in order to protect them from the COVID-19 outbreaks. Therefore, the lockdowns are not extraordinary circumstances because they are not individualized concerns. See United States v. Bulaman, No. 12-794, 2022 WL 3913430, at *4 (D.N.J. Aug. 31, 2022); United States v. Ali, No. 11-752, 2022 WL 3357915, at *4 (D.N.J. Aug. 15, 2022). Likewise, Defendant asserts various other concerns about prison conditions, such as inadequate food, hygiene, healthcare, and access to certain prison facilities.[4] (Def. Br. at 17-19). Similarly, even if these restrictions accurately describe current prison conditions, which the Government disputes, these arguments fail because they are not individualized concerns. They affect all residents of the prison in a similar manner. See Andrews, 480 F. Supp. 3d at 684.

Defendant asserts the lockdowns have negatively impacted his mental health. Again, the United States Sentencing Commission's guidance identifies non-terminal health conditions which "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility" as potentially being an extraordinary and compelling circumstance.

---

[4] Defendant asserts the prison conditions violate various constitutional rights. For the purposes of a compassionate release motion, the lack of an individualized concern is sufficient to reject Defendant's assertion that the conditions are extraordinary and compelling circumstances. The Court will therefore not address Defendant's constitutional arguments.

9

U.S.S.G. § 1B1.13 n.(1)(A)(ii).  Nothing in Defendant's papers suggest his condition is so serious that he cannot care for himself within the environment of his prison.  Even independently of the guidance, Defendant's showing cannot meet the standard.  There is nothing to suggest that Defendant's condition is exceedingly serious, nor is there anything to suggest the lockdowns have impacted him in a manner distinct from other prisoners.  See Andrews, 480 F. Supp. 3d at 684.  Therefore, the impact of lockdowns on Defendant's mental health is not an extraordinary and compelling circumstance.

      ii. Post-Conviction Rehabilitation

Defendant asserts his post-conviction rehabilitation constitutes an extraordinary and compelling circumstance.  Defendant also asserts he is remorseful and does not present a danger to the community.  However, Congress is clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t).  Therefore, Defendant's arguments related to his post-conviction rehabilitation lack merit.  And, because Defendant's arguments regarding remorse and danger to the community are ultimately rehabilitation arguments, they too lack merit.

      iii. Defendant's Age

Defendant appears to argue section 608 of the First Step Act applies Eighth Amendment law concerning punishment of juvenile offenders to anyone 21 years of age or younger at the time of the relevant criminal offense.  Defendant asserts he is entitled to Eighth Amendment juvenile protections because he was 20 years old at the time of his offense.

Preliminarily, Defendant's assertion is an attack on his conviction and cannot be properly brough in a § 3582 motion.  Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002); United

States v. Millhouse, No. 20-3632, 2022 WL 396100, at *2 (3d Cir. Feb. 9, 2022).  Regardless, Defendant's argument is meritless.  Section 608 of the First Step Act defines "youth" in relation to Bureau of Prisons mentorship programs.  It does not purport to modify any laws related to sentencing.  First Step Act of 2018, Pub. L. No. 115-391, § 608(c), 132 Stat. 5194, 5245; see also United States v. Melendez, 534 F. Supp. 3d 172, 175 (D. Mass 2021) (rejecting this argument).  Defendant's constitutional arguments related to Miller v. Alabama fail because Miller prohibits sentencing those under the age of 18 at the time of their offense to life without parole.  Miller v. Alabama, 567 U.S. 460, 465 (2012).  Defendant is not facing life without parole, and at the time of his offense, he was above the age identified in Miller, which was not increased by the First Step Act.  See Melendez, 534 F. Supp. 3d at 175.

      To the extent Defendant asserts his current age constitutes an extraordinary and compelling circumstance, that argument lacks merit.  Defendant is 38 years old.  United States Sentencing Commission guidance provides that age may be an extraordinary and compelling circumstance for inmates of 65 years of age or older "experiencing a serious deterioration in physical or mental health because of the aging process" after serving a significant portion of their sentence.  U.S.S.G. § 1B1.13 n.(1)(B).  The Court finds this guidance persuasive and concludes Defendant's current age is not an extraordinary and compelling circumstance.  To the extent Defendant asserts the Court should grant compassionate release because of his age at the time of the offense, that argument is meritless because age at the time of an offense cannot be an extraordinary and compelling circumstance.  Defendant's age is not an unanticipated circumstance that the Court was unable to take into account at sentencing.  Therefore, Defendant's age cannot constitute an extraordinary and compelling circumstance.  If anything, Defendant's age goes to the § 3553(a)

sentencing factors. As discussed below, the Court took Defendant's age into account at the time of sentencing, and it concludes its analysis at that time was correct.

### iv. Sufficient Deterrence and Other Sentences

Defendant asserts that the portion of his sentence he already served constitutes sufficient deterrence, and that this fact is an extraordinary and compelling circumstance. Even if the time Defendant has served provided sufficient deterrence, that would not constitute an extraordinary and compelling circumstance. Deterrence is not an unanticipated, individualized, extraneous consequence that could qualify as an extraordinary and compelling circumstance. Rather, it is an anticipated goal of every sentencing. Therefore, Defendant's assertion that the time he has served provides sufficient deterrence goes to the § 3553(a) factors rather than the existence of an extraordinary and compelling circumstance.

Defendant also asserts other criminal defendants have faced significantly lighter sentences for similar conduct. Likewise, the sentences of others is not an unanticipated, individualized, extraneous consequence that could qualify as an extraordinary and compelling circumstance. Sentences are a function of the application of the § 3553(a) factors, so Defendant's concern is effectively that similarly situated defendants received a more favorable application of the factors.

Because both these issues are arguments relating to the § 3553(a) factors, they will be addressed below, however both arguments are ultimately meritless.

### d. Sentencing Factors

Because Defendant has failed to state an extraordinary and compelling circumstance, Defendant is ineligible for relief. Therefore, the Court does not need to address the 18 U.S.C. § 3553(a) sentencing factors. It will, however, discuss them briefly because several of Defendant's

12

arguments touch on the sentencing factors. Ultimately, the sentencing factors would not warrant relief even if Defendant identified an extraordinary and compelling circumstance.[5]

Defendant's criminal conduct is exceedingly serious. He is responsible for the death of an innocent person. The seriousness of the offense and the need for adequate deterrence both call for Defendant's initial sentence, which was at the bottom of a stipulated guidelines range. Releasing Defendant now, when he has only served 71% of his sentence,[6] would undermine those factors as well as the need to avoid unwarranted sentencing disparities among similarly situated defendants.

Defendant asserts the Court should consider his young age at the time of the offense. But the Court did consider his age when it initially sentenced him. (Sent. Trans. 4:3-4). Necessarily, Defendant's age at the time of the offense has not changed, and the Court is satisfied it gave Defendant's age proper weight when it initially sentenced him.

Defendant next asserts that the time he has already served constitutes sufficient deterrence. Defendant argues he is a changed man and offers several letters in support of his contention. Even giving Defendant the benefit of the doubt, Defendant's term of imprisonment thus far is insufficient to provide general deterrence. It suggests to society that violent conduct will be condoned if one can demonstrate reform midway through a sentence. The sentencing factors require the Court to consider this impact on society, and it concludes the time Defendant has already served provides insufficient general deterrence for violent conduct like Defendant's.

---

[5] The Court does not need to explicitly address every sentencing factor, although it takes all factors into account. United States v. Merced, 603 F.3d 203, 215 (3d Cir. 2010).
[6] As of February 27, 2023, Defendant has served between 61% and 71% of his sentence, depending on good time credit. (Gov't Br. at 16 n.7).

Finally, Defendant suggests there are similarly situated defendants who received lighter sentences and cites a number of cases where defendants have received shorter sentences. While the Court is not bound by the sentencing decisions of other courts, the Court does consider these other sentences through the lens of § 3553(a)(6), which instructs courts to weigh "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" when imposing a sentence. 18 U.S.C. § 3553(a)(6). The Court has reviewed these cases and concludes that none of the cases are sufficiently similar to Defendant's conduct to justify impacting his sentence. While most of the cases involve murder, none of them involve the murder of an innocent 14-year-old based on an instance of mistaken identity and the conspiracy to murder a rival inmate all in the course of a racketeering conspiracy.[7] Furthermore, there are numerous cases of murders in the course of a racketeering conspiracy that have resulted in substantially greater sentences than Defendant's. See e.g., Ermichine v. McKean FCI, 802 F. App'x 667 (3d Cir. 2020) (defendant sentenced to concurrent life sentences); Moz-Aguilar v. United States, No. 21-9633, 2022 WL 73514 (D.N.J. Jan. 7, 2022) (defendant sentenced to three concurrent life sentences and a consecutive 120-month sentence).[8]

In short, even if the Court were at liberty to modify Defendant's sentence, the Court is satisfied that its initial sentence was the appropriate term of imprisonment in light of the § 3553(a) sentencing factors.

---

[7] Some of Defendant's cases also involve defendants who were sentenced to lengthy terms of imprisonment, often longer than Defendant's, who were granted compassionate released because of medical issues. As discussed above, because Defendant has not identified specific medical issues, these cases do not help Defendant.

[8] The defendants in these cases arguably engaged in more egregious conduct, but that only proves the point that sentencing is highly context dependent. Courts take a wide range of factors into account when deciding on a sentence, as this Court did in this case.

14

## III. Conclusion

For the foregoing reasons, the Court will deny Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). An appropriate order will be filed.

   s/ Stanley R. Chesler   
STANLEY R. CHESLER
United States District Judge

Dated: April 18, 2023