**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| _____ | : | |
| UNITED STATES OF AMERICA, | : | **Criminal Action No. 07-143 (SRC)** |
| | : | |
| v. | : | **OPINION** |
| | : | |
| EMMANUEL JONES. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| _____ | : | |

**CHESLER**, District Judge

  Before the Court is Defendant's Motion for Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(2). (D.E. No. 475.) Defendant requests a retroactive application of sentence reduction under Amendment 821 of the U.S. Sentencing Guidelines. (D.E. No. 475 ("Def. Mov. Br.").) The Government opposes the motion (D.E. No. 477 ("Gov. Opp. Br.")), and Defendant has replied, (D.E. No. 478 (Def. Reply Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. See Fed. R. Crim. P. 43(b)(4); United States v. Styer, 573 F.3d 151, 154 (3d Cir. 2009). For the following reasons, the Court DENIES Defendant's motion.

**I.  BACKGROUND**

  The factual and procedural background in this case is set forth in this Court's prior Opinion, (D.E. No. 453). In brief, Defendant had been involved in the Fruit Town Brims ("FTB") set of the

Bloods street gang in 2004.  (Presentence Report ("PSR") ¶ 69.)  On July 19, 2004, a member of FTB, Anthony Walker ("Walker") became involved in a dispute with "S.J." who was not a member of FTB.  Following a series of gun shots fired at Walker, Walker fled and informed FTB members in Jersey City of his dispute with S.J.  (PSR ¶¶ 70-72.)  FTB members, including Defendant, sought out S.J. for retaliation.  (PSR ¶¶ 70-72.)  Defendant and FTB member "Brooks," armed with a .40 caliber gun and .45 caliber gun respectively, set out on foot to find S.J. while other FTB members remained in a getaway van.  (PSR ¶ 72.)  Ultimately, Defendant and Brooks shot an individual they believed to be S.J. as well as three bystanders on Wilkinson Avenue in Jersey City.  (PSR ¶¶ 70-73.)  It was later determined that Defendant and Brooks did not shoot S.J. as intended, but instead shot and killed, "M.T.," the wrong individual.  (Id.)

 Defendant was arrested by the Hudson County Prosecutor's Office on November 9, 2004. (PSR ¶¶ 275-76.)  While awaiting trial on a state indictment in October 2006, Defendant conspired to murder "C.C.," a rival gang member of FTB who challenged Defendant's leadership and was incarcerated with Defendant at Hudson County Jail.  (PSR ¶ 94.)  At Defendant's direction, C.C. was beaten with a mop, fell down a flight of stairs, and was rendered unconscious.  (PSR ¶¶ 94-96.)  C.C. suffered a neck injury and left basal ganglia bleed in the brain and was hospitalized for seven days.  (Id.)

On February 27, 2007, a federal indictment relating to the murder of M.T. was unsealed, charging Defendant and four other individuals with multiple counts of 18 U.S.C. § 1959, including a death penalty eligible offense.  The Government later informed the Court that it would not be seeking the death penalty.  (D.E. No. 48.)  After a hearing on Defendant's pre-trial motions, the case was delayed as Defendant sought to demonstrate that he was incompetent to stand trial.  (D.E. Nos. 106, 110-11, 118, 123, 126-27, 150.)  During this time, on September 27, 2008, telephone

calls, in which Defendant attempted to smuggle drugs into jail with the assistance of other gang members, were intercepted. (PSR ¶ 148; Gov. Opp. Br. at 3.) On December 12, 2008, a federal grand jury returned the first superseding indictment. (D.E. No. 102.) On May 17, 2010, Defendant was found competent to stand trial. (D.E. Nos. 156-57.) On January 14, 2011, a federal grand jury returned an 18-count second superseding indictment against Defendant and other FTB members. (D.E. No. 177.)

On July 13, 2011, pursuant to a plea agreement with the Government, Defendant pleaded guilty to a racketeering conspiracy in violation of 18 U.S.C. §§ 1962(d) & 1963 and admitted to murder and conspiracy to murder. (D.E. No. 259.) At sentencing on June 8, 2012, Defendant was determined to have a total offense level of 40, a criminal history score of four, and a criminal history category of III, resulting in a guideline range of 360 months to life imprisonment. (D.E. No. 309.) Defendant was sentenced to a term of imprisonment of 360 months consistent with the terms of the plea agreement. (Id.) Defendant's anticipated release date is October 3, 2029.

In 2013, Defendant filed a motion to vacate, set aside or correct the sentence pursuant to 18 U.S.C. § 2255, arguing that he received ineffective assistance of counsel, which this Court denied. (D.E. Nos. 17, 18.) On December 13, 2022, Defendant filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), which this Court denied. (D.E. No. 453.) The Court subsequently denied Defendant's motion for reconsideration. (D.E. No. 456.) On September 16, 2024, Defendant filed the presently pending motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2).

## II.    LEGAL STANDARD

As a general matter, "a court cannot modify a term of imprisonment after it has been imposed without specific authorization." United States v. Crespo, 2024 WL 3227066, at *1

(D.N.J. June 28, 2024) (quoting <u>McMillan v. United States</u>, 257 F. App'x 477, 479 (3d Cir. 2007)).

However, pursuant to 18 U.S.C. § 3582(c)(2), a district court may reduce a defendant's sentence

if the defendant "has been sentenced to a term of imprisonment based on a sentencing range that

has subsequently been lowered by the Sentencing Commission" and if "after considering the

factors set forth in section 3553(a) to the extent that they are applicable, [] such a reduction is

consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §

3582(c)(2); <u>United States v. Aument</u>, 2024 WL 3717092, at *1 (3d Cir. Aug. 8, 2024).

Courts employ a two-step inquiry to determine whether a reduction of sentence is

warranted under 18 U.S.C. § 3582(c)(2). At step one, a court will look to "the Commission's

instructions from U.S.S.G. § 1B1.10 to determine the prisoner's eligibility for a sentence

modification and the extent of the reduction authorized." <u>Dillon v. United States</u>, 560 U.S. 817,

826-27 (2010). Under U.S.S.G. § 1B1.10, a court will:

> determine the amended guideline range that would have been
> applicable to the defendant if the amendment(s) to the guidelines
> listed in subsection (d) had been in effect at the time the defendant
> was sentenced. In making such determination, the Court shall
> substitute only the amendments listed in subsection (d) for the
> corresponding guideline provisions that were applied when the
> defendant was sentenced and shall leave all other guideline
> application decisions unaffected.

At step two, the court will consider the factors listed in 18 U.S.C. § 3553(a) to determine

whether a reduction in sentence is warranted "in whole or in part under the particular circumstances

of the case." <u>Dillon</u>, 560 U.S. at 826-27.

## III.    DISCUSSION

Defendant seeks a sentence reduction of his 360 month sentence to 324 months under

Amendment 821 of the U.S. Sentencing Guidelines, enacted on November 1, 2023. Defendant

4

argues that under Part A of Amendment 821, his status points are reduced from two to zero, reducing his criminal history category from III to II, and thus making his new guideline range 324 to 405 months. (Def. Mov. Br. at 8.) The Government does not dispute Defendant's calculations and eligibility for a reduction in sentence at step one of the analysis. (Gov. Opp. Br. at 5.) However, the Government argues that a review of the 18 U.S.C. § 3553(a) factors under step two of the analysis does not warrant a reduction of sentence. (Gov. Opp. Br. at 5-8.)

The Court agrees with both parties in finding that at step one of the <u>Dillon</u> analysis, Defendant is eligible for a reduction in sentence under Amendment 821 given Defendant's new guideline range. Part A of Amendment 821 applies retroactively and modifies the way status points are calculated. Prior to the amendment, two status points were assigned to an offender who committed the offense at issue while under any criminal justice sentence, such as probation. Following the amendment, offenders who have six or less criminal history points according to U.S.S.G. § 4A1.1(a)-(d) are not assigned any status points. U.S.S.G. § 4A1.1. At the time of sentencing, Defendant had four criminal history points, inclusive of two status points as Defendant committed the instant crime while out on probation for four months. (D.E. No. 309.) Under Amendment 821, Defendant's two status points are removed because as calculated under section 4A1.1(a)-(d), Defendant's total criminal history points is six or less and thus, Defendant is assigned no status points. U.S.S.G. § 4A1.1(e). This brings Defendant's criminal history score down from four points to two, therefore lowering Defendant's criminal history category to II and resulting in a guideline range of 324 to 405 months.

Although Defendant has met the standard under 18 U.S.C. § 3582(c)(2) for eligibility of a reduction in sentence under step one of the analysis, the Court finds that a reduction of Defendant's sentence is not warranted when applying the 18 U.S.C. § 3553(a) factors at step two of the <u>Dillon</u>

analysis. Among others, the 18 U.S.C. § 3553(a) factors include "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" and "the kinds of sentences available" and applicable sentencing ranges. 18 U.S.C. § 3553 (a)(1)-(4).

In considering whether to grant a reduction in sentence, "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." Application Note 1(B)(iii), U.S.S.G. 1B1.10. The "weighing and consideration of multiple factors, [is] expressly left to a court's discretion." United States v. Styer, 573 F.3d 151, 155 (3d Cir. 2009) (affirming district court's denial of sentence reduction despite defendant's eligibility under amended guidelines). Indeed, courts have denied motions to reduce sentences under 18 U.S.C. § 3582(c)(2) where "the instant crimes [are found] to be quite serious in nature given the circumstances" and a defendant attempts to "subvert the law" following sentencing. See, e.g., United States v. Teed, 2024 WL 4519093, at *3 (W.D. Pa. Oct. 17, 2024) (denying motion to reduce sentence under 18 U.S.C. § 3582(c)(2) upon review of 3553(a) factors despite defendant's eligibility for sentence reduction under Part A of Amendment 821).

At the time of Defendant's initial sentencing, the Court determined the 360 month sentence, the bottom of the guideline range at the time, to be sufficient and not greater than necessary. (D.E. No. 453.) This Court affirmed the sufficiency of the sentence following the denial of Defendant's motion for compassionate relief and motion for reconsideration. (D.E. Nos. 453, 456.) As noted in this Court's Opinion from April 18, 2023, upon review of the 3553(a) factors, the Court held that "the sentencing factors would not warrant relief even if Defendant identified an extraordinary and compelling circumstance." (D.E. No. 453 at 13.) The Court further considered Defendant's

age at the time of initial sentencing and the need for general deterrence and concluded that Defendant's initial sentence "was the appropriate term of imprisonment in light of the § 3553(a) sentencing factors." (D.E. No. 453 at 14.)

In looking to the 3553(a) factors, the Court finds the nature and circumstances of the offense to be severe and weigh in favor of denying Defendant's motion. As noted in the Court's prior Opinion, the "seriousness of the offense and the need for adequate deterrence both call for Defendant's initial sentence." (D.E. No. 453 at 13.) As this Court previously held, Defendant's "criminal conduct is exceedingly serious." (D.E. No. 453 at 13.) Defendant is responsible for the death of an innocent person. (PSR ¶¶ 69-73.) The crime to which Defendant pleaded guilty to, racketeering conspiracy in violation of 18 U.S.C. §§ 1962(d) & 1963 and admitting both to murder and conspiracy to murder is particularly heinous. (PSR ¶ 224.) As the Government points out, Defendant and his co-conspirators "shot and killed M.T. – an innocent individual who was not the intended target – and struck and injured three other bystanders, including a three-year-old." (Gov. Opp. Br. at 7.)

Moreover, Defendant's conduct while awaiting trial relating to the murder of M.T., weighs against a reduction in sentence. In October 2006, Defendant conspired to murder C.C., a rival gang member of FTB who was incarcerated with Defendant at Hudson County Jail. (PSR ¶ 74.) At Defendant's direction, C.C. was beaten with a mop, fell down a flight of stairs, and was rendered unconscious. (PSR ¶ 95.) On September 27, 2008, several telephone calls were intercepted in which Defendant attempted to smuggle drugs into jail with the assistance of fellow gang members. (PSR ¶ 148.) Defendant's criminal conduct warrants the sentence he received at initial sentencing.

In viewing the kinds of sentences available and the applicable sentencing ranges, the Court finds Defendant's original sentence to be sufficient. The initial 360 month sentence falls within

the amended guideline range of 324 months to 405 months. Defendant's eligibility for a sentence reduction in the instant matter "does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right." Background, U.S.S.G. § 1B1.10. Moreover, at the time the federal indictment was unsealed, Defendant was eligible for a death penalty offense and if the case proceeded to trial, Defendant could have faced mandatory life imprisonment for the offenses in the indictment. (Gov. Opp. Br. at 3.) However, the Government chose not to pursue the death penalty and entered into a plea agreement with Defendant. (D.E. Nos. 48, 259.) The 360 month sentence imposed was consistent with the terms of Defendant's plea agreement with the Government and both Defendant and the Government agreed that 30 years was reasonable. (D.E. No. 309; PSR ¶ 224.) In short, the Court gave Defendant the deal he asked for and the Court finds no reason to depart from it.

The Court further finds that the history and characteristics of the Defendant as well as the need for both specific and general deterrence weigh against a reduction in sentence. The Court notes that Defendant had a difficult youth and was 20 years old at the time of the murder of M.T. (PSR ¶¶ 277-91; Def. Mov. Br. at 13.) Defendant urges that his time in custody has been productive and has submitted letters from friends and family in further support of his changed behavior. (Def. Mov. Br. at 5-7.) While incarcerated, Defendant has taken courses in real estate and personal finance, among others, and has also participated in leadership programs including the "Inside Out Dad" and "Inside Out Being a Man" program. (Def. Mov. Br. at 6.)

Defendant further notes that as he has been awarded one year off his sentence under the First Step Act and completed 81% of his sentence thus far, "[a]t this final stage of a lengthy term of incarceration, the 3553(a) analysis should prioritize [Defendant's] prospects for reintegration

above punishment and deterrence." (Def. Mov. Br. at 12.) Defendant further argues that status points do not prevent recidivism and instead, produce overly long sentences. (Def. Mov. Br. at 9.)

Defendant also asks this Court to "reconsider its findings that a reduced sentence would negatively impact society" given "recent scientific developments" "about the brains of emerging adults and what might change their trajectories towards pro-social development." (Def. Mov. Br. at 16.) Defendant states "[i]t is now widely accepted in the neuroscience field that the brain's frontal lobes, responsible for the executive functions of planning for the future, problem-solving, and self-regulation, continue to develop well into the mid-20's (roughly ages 24 to 27)." (Def. Mov. Br. at 14.) Defendant desires a reduced sentence to return home to help raise his family and states he will now re-enter society "as a law-abiding and positive role model for young children that he did not see when he was growing up." (Def. Mov. Br. at 15.)

The Court recognizes Defendant's efforts to best prepare for reentry into society including his completion of various educational and vocational courses as well as participation in BOP programming. (Def. Mov. Br. at 5-7; Def. Reply Br. at 2.) However, the Court finds any rehabilitation done by Defendant to be outweighed by the 3553(a) factors weighing against a reduction in sentence. In addition to the points above, the Court notes that at the time of sentencing, Defendant was 27 years old and had been previously convicted of a firearm offense and aggravated assault. (PSR ¶¶ 264, 271.) Furthermore, Defendant had been on probation for only four months when he committed the instant offense. (PSR ¶¶ 274-75.)

Moreover, as the Government points out, Defendant has committed three disciplinary infractions while incarcerated. (Gov. Opp. Br. at 8.) On October 14, 2017, Defendant was sanctioned for refusing to obey an order. (D.E. No. 477-2.) On two occasions, September 29, 2017, and March 5, 2021, Defendant was found to be in possession of a cell phone. (D.E. No.

477-2.)  While all three infractions are serious, the Court finds Defendant's possession of a cell phone in 2017 and 2021 to be significant violations.  Previously, in 2008, while Defendant was awaiting trial relating to the murder of M.T., several telephone calls were intercepted in which Defendant attempted to smuggle drugs into jail with the assistance of fellow gang members.  (PSR ¶ 148.)  The Court finds that Defendant's possession of a cell phone on two occasions is not innocuous.  The latest infraction occurred less than three years ago.  Despite Defendant's continued participation in educational and vocational courses, the Court cannot overlook the serious infractions Defendant has committed.  As a matter of both general and specific deterrence, and Defendant's own personal calculated conduct, the Court is satisfied that the 3553(a) factors do not provide a basis to reduce the Court's previously imposed sentence of 360 months.

In short, Defendant's sentence reflects the seriousness of the offense and the 3553(a) factors do not weigh in favor of reducing Defendant's sentence.  Defendant was a leader of a set of the Bloods gang that terrorized Patterson and sought to terrorize Jersey City.  Without a sentence reduction, Defendant will reenter society in five years.  At that point, Defendant will have ample opportunity to demonstrate that his rehabilitation efforts have made him a productive member of society.  The two-point reduction in criminal history points which lowers the sentencing guideline range does not impact the Court's analysis of the 3553(a) factors which weigh against a reduction in sentence.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) (D.E. No. 475) is DENIED.  Appearing that Defendant's letter motion (D.E. No. 470) requests the same relief, D.E. No. 470 is also hereby terminated.  An appropriate Order will follow.

_____s/Stanley R. Chesler_____
STANLEY R. CHESLER, U.S.D.J.

Dated: November 7, 2024